IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TONY CHANNELL,

     Plaintiff,

vs.

NUTRITION DISTRIBUTION, LLC d/b/a
ANABOLIC XTREME; ANABOLIC
RESOURCES, LLC; DESIGNER
SUPPLEMENTS, INC.; DPS NUTRITION,
INC.; STG INVESTORS, LLC d/b/a
SUPPLEMENTSTOGO.COM, et al.,

     Defendants.

**RECEIVED**

SEP 2 5 2008

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

\* \* \* \* \* \* \* \* \* \* \* \* \*

CASE NO.: 2:08 CV 794-WHA

## NOTICE OF REMOVAL

**TO THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA:**

COMES NOW, Nutrition Distribution, LLC, by and through undersigned counsel, and files this Notice of Removal of this action pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 1441(a) and (b), and 28 U.S.C. § 1446 (b)  from the Circuit Court of Covington County, Alabama, and in support hereof, respectfully show:

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

On November 2, 2007, Plaintiff Tony Channell filed a Complaint in the Circuit Court of Covington County, Alabama.  The Complaint sets forth claims against Nutrition Distribution, LLC, and others.  That state court proceeding bears the Docket No. CV-2007-900047 ("State Court Action").  Consistent with 28 U.S.C. § 1446 (b)  and Local Rule 81.1, a clear and legible copy of all records and proceedings from the State Court Action, including copies of all process, pleadings and orders served on Nutrition Distribution, LLC, in the State Court Action are

attached.  *See* **Exhibit A, subparts 1 through 12.**  In his Complaint, Plaintiff alleged that

Nutrition Distribution, LLC, and the other defendants designed, tested, failed to test,

manufactured, packaged, labeled, promoted, marketed, advertised, sold and/or distributed a

product known as "Superdrol," and further encouraged its use through advertising mediums,

misrepresented its safety and concealed dangerous and potentially life-threatening side effects.

*See* **Exhibit A.1,** ¶16.  Plaintiff further alleged that as a result of using Superdrol, elsewhere

known as "Anabolic Xtreme Superdrol," he suffered serious and life-threatening injuries,

including but not limited to liver failure.  *See* **Exhibit A.1,** ¶17.  Plaintiff alleged that the

defendants acted with a conscious disregard of the foreseeable harm caused by Superdrol, and

that the defendants' conduct "exhibited a level of care evidencing fraud, ill will, recklessness

and/or gross negligence," with a willful and intentional disregard of Plaintiff's "individual

rights," and with oppression, fraud, and malice towards Plaintiff.  *See* **Exhibit A.1,** ¶¶19-22.

Plaintiff prayed for an award of punitive damage against the defendants "in an amount

sufficiently large to be an example to others, and to deter these Defendants and others from

engaging in such conduct in the future."  *See* **Exhibit A.1,** ¶22.  Plaintiff further sought an award

of compensatory and punitive damages from the defendants based on claims of strict liability,

negligence/wantonness, breach of express warranty, breach of implied warranty, and

fraud/misrepresentation.  *See* **Exhibit A.1,** generally.

Before Nutrition Distribution, LLC, was served with process in the State Court Action,

another Defendant, Designer Supplements, Inc., filed a Notice of Removal based on diversity-of-

citizenship jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441.  *See* **Exhibit B.**  Following a

Motion to Remand by the Plaintiff, the action was remanded by this Court pursuant to an

Opinion and Order on January 25, 2008.  *See* **Exhibit C.**  In its Opinion and Order, the Court

2

found that Designer Supplements, Inc., had failed to meet its burden of establishing that that $75,000 amount-in-controversy requirement was met. In particular, the Court emphasized that the only record before it was the Plaintiff's pleadings, which contained unspecified damages. *See* **Exhibit C**, p. 3.

In the meantime, on January 3, 2008, the undersigned counsel for Nutrition Distribution, LLC, sent correspondence to the Plaintiff's attorney waiving service of process on behalf of Nutrition Distribution, LLC. *See* **Exhibit D.** In light of the Plaintiff's representations in his Motion to Remand and the Court's conclusions in its January 25, 2008, Opinion and Order, Nutrition Distribution, LLC, undertook upon receipt of the Court's Opinion and Order to clarify the amount in controversy in this action. On January 29, 2008, Nutrition Distribution, LLC, served the following Requests for Admissions on the Plaintiff seeking to have Plaintiff admit or deny the following:

1. Admit that you are not seeking to recover from defendants an amount greater than $74,000 on any and all claims, in the aggregate, as alleged in your complaint, including interest and the costs of this lawsuit.

2. Admit that you will not accept, notwithstanding any judgment rendered by a jury or by the Court, an amount any greater than $75,000 on any and all claims, in the aggregate, as alleged in your complaint, including interest and the costs of this lawsuit.

3. Admit that if there is a judgment in your favor by a jury or by the Court in an amount greater than $75,000 on any or all claims alleged in your complaint, including interest and the costs of this lawsuit, you will agree to remit the amount of such judgment so that the final judgment is no greater than $75,000, regardless of the amount of the judgment entered by the jury or Court.

4. Admit that your total damages do not exceed $75,000.

5. Admit that the amount in controversy will not exceed $75,000.

6. Admit that you waive, release, and remit your claim to any damages greater than $75,000.

3

7.  Admit that you agree to be bound by such waiver, release, and remitter no matter which court has jurisdiction, and admit that you are to be precluded from demanding damages greater than $75,000.

8.  Admit that you do not seek to recover a combined sum or value exceeding $75,000, exclusive of interest and costs, from this defendant and any other defendants which may be later added by you via an amended complaint(s) filed in this lawsuit.

9.  Admit that you will not execute on or attempt to enforce any judgment or judgments rendered in your favor against this defendant or any other defendant in excess of $75,000, exclusive of interest and costs of this lawsuit.

10. Admit that you will not seek to amend your complaint to seek an amount exceeding $75,000, exclusive of interest and costs of this lawsuit, regardless of any evidence that is currently known or which may be discovered in the process of this litigation.

11. Admit that neither you nor your attorney will request that the trier of fact return a verdict in your favor and seek an award of damages, whether compensatory or punitive, that exceeds $75,000, exclusive of interest and costs of this lawsuit, regardless of any evidence that is currently known or which may be discovered in the process of this litigation.

*See* **Exhibit E.**  By agreement of the parties, Plaintiff was permitted time in addition to that allowed under Alabama rules to respond to these requests.  Plaintiff submitted responses on May 16, 2008.  Plaintiff's response to each of the above was:

> As discovery is ongoing at this point, a complete compilation of damages has not been made, and thus Plaintiff is without sufficient information, knowledge and belief as to what damages may be awarded in this matter, and can neither admit or deny this request.  Plaintiff will seek to enforce any judgment that a fair and impartial jury may award.  Further, Plaintiff denies.

*See* **Exhibit F.**

On May 27, 2008, Plaintiff responded to interrogatories served by Co-Defendant Designer Supplements, Inc.  In those responses, Plaintiff asserted that he was out of work from January 10, 2006, to March 20, 2006, due to his injury associated with the use of Anabolic Xtreme Superdrol.  Plaintiff stated that he had "not yet compiled" wage loss information, but that

4

he received $1,103.26 in vacation/sick compensation and $5,278.51 in short term disability compensation. *See* **Exhibit G.**

In further effort to effort to clarify the amount in controversy in this action, on June 16, 2008, Nutrition Distribution, LLC, served Interrogatories on Plaintiff, to which the Plaintiff responded on July 16, 2008. Those Interrogatories included the following question and response:

4.      Do you contend that you have permanent injuries as a result of your use of the product involved in this action?  If so:

(a)      Describe the nature of the injuries you allege to be permanent;

(b)      Describe the treatment you are currently receiving, including the names and specialties of the physicians and health care professionals who are providing such treatment and the ongoing cost of such treatment;

(c)      Describe the treatment you anticipate receiving in the future, including the anticipated cost of such treatment;  and

(d)      Identify by name, specialty and address each physician or other health care professional who has informed you that the alleged injuries are permanent.

**RESPONSE:  Yes, at my last bilirubin checkup at UAB, my bilirubin levels had not yet returned to normal, and my eyes continued to be icteric.  I have some scarring caused by the pustules that covered my body resulting from the liver failure.  According to my doctor, the level of liver death is uncertain. As a result of my liver failure, I am at an increased risk of future diseases of the liver.  Further, I now suffer from joint pains which started immediately after my use of Anabolix Xtreme Superdrol.**

*See* **Exhibit H.**

Nutrition Distribution, LLC, also served Requests for Production on Plaintiff on June 16, 2008, requesting in part production of all medical bills for treatment related to the injuries involved in this lawsuit.  In his July 16, 2008, response, Plaintiff produced some medical records and bills, including bills from Crenshaw Community Hospital reflecting charges of $1,137 for

treatment between December 15, 2005, and December 28, 2005, as well as some billing from UAB Hospital. *See* **Exhibit I.** However, he stated, "Mr. Channell is still gathering documents responsive to this request." *See* **Exhibit J.**

Plaintiff was deposed in the State Court Action on July 18, 2008. During his deposition, Plaintiff testified that about two weeks after he began taking Superdrol, he started having yellowing of the eyes, darkening of the urine, decreased appetite and nausea. Over following weeks, he developed itching, continued poor appetite, lack of sleep, and an inability to use the bathroom. *See* **Exhibit K**, pp. 57 to 63. Plaintiff initially sought treatment from Dr. Jean Senecal in Luverne, Alabama, who Plaintiff testified initially suspected hepatitis and eventually referred Plaintiff to UAB Hospital. Plaintiff testified that Dr. Senecal told Plaintiff that he would need a liver transplant or he would die. Plaintiff testified that during his hospitalization, he was "depressed and down and out," and had to explain to his young son the possibility of his dying. *See* **Exhibit K**, p. 149 to 150. Plaintiff testified that he lost 50 pounds during his liver failure treatment, and that he remains 18 pounds under his previous weight. He testified that he has holes in his skin on his arms and legs where he scratched due to itching and pustules. He also developed joint pain in his knees and elbows which continues, and which he attributes to his use of Superdrol. With respect to physical activity, Plaintiff testified that while he can still engage in the activities he engaged in before his illness, he is not as active and cannot run without pain. He testified, "If my son just grabs me or tries to tackle me out in the yard, it's not fun anymore." *See* **Exhibit K**, pp. 92 to 94.

With respect to medical expenses, Plaintiff testified at his deposition that his health insurance provider at the time of his liver failure was Blue Cross Blue Shield of Tennessee. Plaintiff testified that his insurer had covered some of his expenses and that he had paid some out

6

of pocket, and still owed "quite a bit." He testified that he still owed $2,000 to $3,000 to UAB, and remains on a payment plan, but stated that he had not specifically calculated all of his medical expenses. *See* **Exhibit K**, pp. 119-120. With respect to his lost income, Plaintiff testified that during his hospitalization at UAB, he took his accumulated vacation and sick days, for which he was paid for a full day, and he received short term disability, which was 60% of his regular pay. However, Plaintiff testified that he had not calculated up his entire lost wage claim, and did not have an estimate of that figure during his deposition. *See* **Exhibit K**, pp. 131 to 134. Plaintiff also testified that he incurred expenses traveling from his home in Opp, Alabama, to Birmigham for treatment, which he did with regularity for several months. However, Plaintiff testified that he had not maintained a record of those expenses. *See* **Exhibit K**, pp. 135 to 136.

On July 21, 2008, Co-Defendant Designer Supplements, Inc., served a request for production on Plaintiff requesting that Plaintiff execute a consent for the release of payments made by Blue Cross Blue Shield of Tennessee. *See* **Exhibit L**. Plaintiff executed the consent form. *See* **Exhibit M.** Pursuant to the executed consent, Designer Supplements, Inc., requested that Blue Cross Blue Shield of Tennessee produce a payment history for Plaintiff. On August 28, 2008, the undersigned counsel for Nutrition Distribution, LLC, received via U.S. mail a courtesy copy of an itemization of claims paid by Blue Cross Blue Shield of Tennessee ("itemization"), reflecting medical expenses incurred by Plaintiff Tony Channell from January 5, 2006, through December 17, 2007, for treatment of medical conditions Plaintiff attributes to the use of the product involved in this action. *See* **Exhibit N.** The itemization reflects a total of $34,347.72 in medical expenses incurred between January 5, 2006, and December 17, 2007 for conditions Plaintiff attributes to his use of Superdrol. *See* **Exhibit N.** The itemization also reflects a total of $4,602.22 in incurred pharmacy charges, some or all of which may be

attributed to Plaintiff's use of Superdrol. *See* **Exhibit N**. The itemization provided a more complete statement of medical expenses incurred for the injuries Plaintiff alleges than any discovery responses, deposition testimony or other information heretofore provided by Plaintiff. Even so, it appears that this larger amount may be incomplete as it does not contain a statement of charges for any physician treatment, medical testing or hospitalizations incurred before January 5, 2006.

The itemization received August 28, 2008, was the first paper received by Nutrition Distribution, LLC, from which it could be ascertained that this case was one which is removable. Accordingly, consistent with 28 U.S.C. § 1446(b), this Notice of Removal is being filed within 30 days after receipt by counsel for Nutrition Distribution, LLC, of the itemization.

After receiving the itemization, and in light of Plaintiff's deposition testimony and the other representations and documents produced by Plaintiff in the course of written discovery, the undersigned counsel for Nutrition Distribution, LLC, sent correspondence dated September 2, 2008, to Plaintiff's attorneys. The correspondence stated:

> I am writing to request supplementation of the Plaintiff's responses to the Request for Admissions we served earlier this year. Having obtained Mr. Channell's deposition testimony regarding his current medical and employment status, as well as most if not all of his medical records, bills and payment history for the injury he alleges to have sustained as a result of the use of Superdrol, it appears that Mr. Channell's condition is stable. Accordingly, the Plaintiff is in as good a position now as he will be at the time of trial to identify his damages and request an award.

The correspondence requested that Plaintiff provide supplemental responses within 14 days, or by September 16, 2008. *See* **Exhibit O**. As of the filing of this Notice of Removal, Plaintiff has not supplemented his responses to the Requests for Admission, nor otherwise responded to the September 2, 2008, correspondence.

8

The undersigned counsel for Nutrition Distribution, LLC, has contacted the attorneys for Designer Supplements, Inc., and DPS Nutrition, Inc., and understands that these parties consent to removal and will be filing notices of joinder by September 26, 2008.

### SHORT PLAIN STATEMENT OF GROUNDS FOR REMOVAL

Federal Courts have diversity jurisdiction over matters where the parties citizens of different states and the amount in controversy exceeds $75,000.00. 28 U.S.C. §§ 1332 and 1441. In this matter, the diversity of citizenship is established. Additionally, the amount in controversy exceeds $75,000.00.

### Diversity of Citizenship

Plaintiff Tony Channell is a resident citizen of the State of Alabama.

Defendant Nutrition Distribution, LLC, is a limited liability company organized and existing under the laws of the State of Arizona. Its members are citizens of Arizona, Utah and/or California.

Defendant Designer Supplements, Inc., is a corporation organized and existing under the laws of the State of New York and maintains its principal place of business in the State of New York. Accordingly, under 28 U.S.C. § 1332(c)(1), Designer Supplements, Inc., is deemed to be a citizen of the State of Arizona.

Defendant DPS Nutrition, Inc., is a corporation organized and existing under the laws of the State of Pennsylvania and maintains its principal place of business in the State of Pennsylvania. Accordingly, under 28 U.S.C. § 1332(c)(1), Designer Supplements, Inc., is deemed to be a citizen of the State of Pennsylvania.

Defendants Anabolic Resources, LLC, and STG Investors, LLC d/b/a Supplementstogo.com have been voluntarily dismissed from this action.

This action is removable to this Court pursuant to 28 U.S.C. §§ 1332 and 1441 because there is complete diversity of citizenship between the plaintiff and defendant.

### Amount In Controversy

A removing defendant has the burden of proving that the $75,000 amount-in-controversy requirement for diversity is met. *Leonard v. Enterprise Rent-A-Car*, 279 F.3d 967, 972 (11th Cir. 2002). In this lawsuit, it was previously determined that the case stated by the initial Complaint, in which the damages were unspecified, was not removable because the amount in controversy did not clearly exceed $75,000 based on the facts alleged in the Complaint. However, 28 U.S.C. §1446(b) provides that if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

The Blue Cross Blue Shield of Tennessee itemization reflecting as much as $38,949.94 received by Nutrition Distribution, LLC, on August 28, 2008, constitutes "other paper from which it may first be ascertained that the case is one which is or has become removable." In *Lowery v. Alabama Power Co.*, 483 F.d 1184 (11th Cir. 2007), the Eleventh Circuit observed that under the second paragraph of 28 U.S.C. §1446(b), a case becomes removable when three conditions are present: there must be (1) "an amended pleading, motion, order or other paper," which (2) the defendant must have received from the plaintiff (or from the court, if the document is an order), and from which (3) the defendant can "first ascertain" that federal jurisdiction exists. *Lowery*, 483 F.3d 1184, 1214, fn. 63. The Blue Cross Blue Shield of Tennessee itemization was obtained pursuant to a consent form signed by the Plaintiff for the express purpose of obtaining

information about the amount in controversy in this action.[1]

The itemization demonstrates that this action is removable. The itemization was the first account of presumably all of the Plaintiff's incurred medical and pharmacy charges from January 5, 2006, to December 17, 2007. While it did not include the $1,137 in charges from Crenshaw Community Hospital, or any other charges that may have been incurred during 2005, the itemization does reflect a total of $34,347.72 in medical expenses for conditions Plaintiff attributes to his use of Superdrol between January 5, 2006, and December 17, 2007, and a total of $4,602.22 in incurred pharmacy charges, some or all of which may be attributed to Plaintiff's use of Superdrol. Along with Plaintiff's claimed $1,103.26 in lost vacation/sick compensation; $5,278.51 in short term disability payments; and approximately $3,519.01 in lost wages not reimbursed by short term disability, based on Plaintiff's testimony that the payment he received was approximately 60% of what his pay would have been, the total medical expenses and out-of-pocket losses which Plaintiff may potentially recover in this action is **at least** $49,987.72.

In addition to the $49,987.72 in expenses and out-of-pocket losses, and any additional expense or loss not produced or accounted for to date, Plaintiff also seeks recovery of general compensatory damages. First, Plaintiff claims that he endured pain, suffering and mental anguish while dealing with liver failure he attributes to his use of Superdrol. He testified that he lost 50 pounds over eight to ten weeks and endured itching, poor appetite, lack of sleep, an inability to use the bathroom, and depression during the period of time in which he was receiving treatment for liver failure. Plaintiff further testified that he was afraid that he would die, and that

---

[1] As *Lowery* explains, "other paper" contemplated by 28 U.S.C. §1446(b) must be received from the plaintiff or from the court. Here, the Blue Cross Blue Shield itemization, which comprises information regarding claims submitted and payments made under a policy of health insurance covering Plaintiff for medical treatment received by the Plaintiff, was obtained as a result of express permission of Plaintiff, and was not independently constructed or compiled by any Defendant. Accordingly, the itemization is properly deemed "other paper" under §1446(b).

he had to explain to his young son about the possibility of his dying.

Further, Plaintiff has alleged that he has sustained permanent injuries. He stated that he continues to have abnormal results from blood testing; permanent scarring on his arms and legs from itching and pustules; icteric eyes; and an uncertain level of liver death. Plaintiff further stated that he remains at an increased risk for future diseases of the liver, and that he remains 18 pounds under his previous weight. Plaintiff also developed joint pain in his knees and elbows which continues, and he testified his level of physical activity and ability to enjoy activities with his son have been permanently impaired.

Damages for pain, suffering and mental anguish, and for the permanent injuries Plaintiff alleges, are general compensatory damages and are by their nature unspecified. However, the fact that they are unspecified does not mean that such damages should be disregarded in considering the amount in controversy in this action. The amount in controversy is not determined by whether Plaintiff can establish liability for these general compensatory damages, or whether he will actually recover such damages; it is determined instead by the amount *legally recoverable* according to Plaintiff's allegations. Assuming Plaintiff prevails on his allegations in his Complaint and discovery of substantial pain and suffering over several months, and of persistent permanent conditions, he will be awarded general compensatory damages over and above $49,987.72 in medical expenses and out-of-pocket losses.

In addition to $49,987.72 for expenses and out-of-pocket losses; any additional expenses which have not yet been disclosed; a general compensatory award for pain, suffering and mental anguish; and a general compensatory award for permanent injuries, Plaintiff also seeks an award of punitive damages against each of the three Defendants in this action. When determining the jurisdictional amount in controversy in diversity cases, the Eleventh Circuit has held that

punitive damages must be considered, unless it is apparent to a legal certainty that such cannot be recovered. *Holley Equipment Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987), citing *Bell v. Preferred Life Society,* 320 U.S. 238, 240, 64 S.Ct. 5, 6, 88 L.Ed. 15 (1943); *Wood v. Citronelle-Mobile Gathering System Co.,* 409 F.2d 367, 369 (5th Cir.1968), and *Adolph Coors Co. v. Movement Against Racism and Klan,* 777 F.2d 1538, 1544 (11th Cir.1985).  In his Complaint, Plaintiff alleged that each Defendant has engaged in conscious disregard of foreseeable harm; fraud; ill will; recklessness and/or gross negligence;  with a willful and intentional disregard of Plaintiff's "individual rights";  and with oppression, fraud, and malice. These factual allegations, if established by proof, support an award of punitive damages under Alabama law.  Further, courts of Alabama have held that punitive damage awards are not to be imposed jointly and severally, but are to be based in part upon the reprehensibility of each individual defendant's culpable conduct. *E.g. BMW of North America, Inc. v. Gore,* 701 So.2d 507 (Ala.1997); *Green Oil v. Hornsby,* 539 So.2d 218 (Ala. 1989); *Hammond v. City of Gadsden*, 493 So.2d 1374 (Ala. 1986).  Accordingly, the jury in this action will consider the conduct of each individual Defendant, and, if convinced of Plaintiff's allegations, impose an individual punitive judgment upon each.

Based on the foregoing, the amount in controversy in this action includes $49,987.72 in expenses and out-of-pocket losses;  possible additional expenses which have not yet been disclosed; general compensatory damages for pain, suffering and mental anguish;  general compensatory damages for permanent injuries;  punitive damages against Nutrition Distribution, LLC, for its allegedly culpable conduct;  punitive damages against Designer  Supplements, Inc., for its allegedly culpable conduct;  and punitive damages against DPS Nutrition, Inc., for its allegedly culpable conduct.  Plaintiff has declined to admit that the amount in controversy does

not exceed $75,000, and has refused to disclaim recovery of an amount in excess of $75,000. Accordingly, a preponderance of the evidence demonstrates that the amount in controversy exceeds the jurisdictional minimum of $75,000, and that federal diversity jurisdiction exists pursuant to 28 U.S.C. §§ 1332 and 1441.

### Venue

The Notice is properly filed in the United States District Court for the Middle District of Alabama because the Complaint was filed in the Circuit Court of Covington County, Alabama, and alleges that the events giving rise to the purported claims occurred in this judicial district. 28 U.S.C. § 1391(a)(2).

### CONCLUSION

This Court has jurisdiction in this case as complete diversity exists among Plaintiff all Defendants. In addition, Nutrition Distribution, LLC, has shown by a preponderance of the evidence that the amount in controversy for federal diversity jurisdiction is satisfied. Defendant should not be deprived of its constitutional right to a federal forum in this case under Article III of the United States Constitution.

Promptly after filing this Notice of Removal, Nutrition Distribution, LLC, shall cause a true and correct copy of the same to be filed with the Clerk of the Circuit Court of Covington County, Alabama, in accordance with 28 U.S.C. § 1446(d). Nutrition Distribution, LLC, reserves the right to amend this Notice of Removal as deemed necessary or appropriate.

**WHEREFORE**, Nutrition Distribution, LLC, requests that this Court assume full jurisdiction over the cause herein as provided by law. This Court has jurisdiction over the

dispute for the following reasons: all properly joined parties are completely diverse and the jurisdictional amount has been met.

*Paul V. Lagarde*

PAUL V. LAGARDE (LAG002)
Email: pvl@alfordclausen.com
ANDREW C. CLAUSEN (CLA044)
Email: acc@alfordclausen.com
Attorneys for Nutrition Distribution, LLC

OF COUNSEL:

ALFORD, CLAUSEN & McDonald, LLC
One St. Louis Centre, Suite 5000
Mobile, Alabama 36602
(251) 432-1600
(251) 432-1700 (fax)

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing on counsel for all parties by depositing a copy of same in the United States mail, properly addressed and first class postage prepaid:

W. Roger Smith, III, Esq.
Beasley Allen Crow Methinks Ports & Miles
234 Commerce Street
Montgomery, AL 36104

David F. Miceli, Esq.
David F. Miceli, LLC
119 Maple Street, Suite 201
Carrollton, GA 30117

S. Anthony Higgins, Esq.
Nix Hartford Gilliland Higgins & Hitson, P.C.
Post Office Box 4128
Montgomery, AL 36103

Kathy R. Davis, Esq.
Justin B. Lamb, Esq.
Carr Allison Pugh Howard Oliver & Sisson PC
100 Vestavia Parkway
Birmingham, AL 35216

Done this 25 day of September , 2008.

*Paul Lagarde*

COUNSEL

15